RYDER, Judge.
On March 19,1979, appellant was convicted of the offenses of trespass within an occupied structure, criminal mischief, and resisting arrest without violence, all first degree misdemeanors punishable by a maximum one year’s imprisonment. When appellant appeared for sentencing on April 20, 1979, the State announced its intention to seek punishment as an habitual offender. However, the trial court rejected this option, stating:
I can almost guarantee and predict that if the court embraces the idea of enhanced penalties, the Parole Commission will rotate him through their computer *MXCVII and back out on the street within about eighteen months. So, we don’t exactly accomplish our end to the extent of wanting to incapacitate and/or punish Mr. Blue by giving him over to the state authorities, because they’re not going to keep him and we can keep him for a much longer time at the county stockade pulling sandspurs.
Instead, the court entertained the possibility of giving appellant consecutive one year terms in the county jail. The court subsequently modified its disposition, placed appellant on three consecutive one year terms of probation, but with the condition that each term of probation be served in the county jail.
On April 25, 1979, appellant was again brought before the trial court. The court made inquiry of a bailiff who recalled a conversation he had with appellant while transporting appellant to the county jail after sentencing. In answer to questions propounded to him by the court, the bailiff testified that appellant seemed dissatisfied with the sentence he had received and stated that he would violate his probation in order to go to state prison. The appellant’s testimony generally corroborated that of the bailiff but assigns not the intention to purposefully violate the probation but a stoic resignation that by being placed in jail with “them young jitterbugs out there, I would end up having to smack one of them upside the head and getting my probation violated.” Appellant then opined he would be better off getting his probation violated, doing state time and, thus, he would be released from confinement earlier.
Appellant’s trial counsel urged that appellant’s comments, while unjustified, were probably motivated by frustration, and that appellant actually had not committed any overt act toward violating his probation. In fact, no such overt act by appellant was shown to have occurred. The court disagreed, revoked appellant’s probation, and sentenced him to one year per count consecutive in the county jail. This timely appeal followed.
The question here is whether a defendant’s probation can be properly revoked solely on the basis of an expressed intention to violate its conditions. We think not. While we have found no case dealing with the precise issue before us, the case law strongly suggests that before probation can be revoked, there must be a showing of some overt material violation — some act evidencing an intent to contravene the good intentions of the sentencing magistrate and an inability to comport with the restrictions that accompany probation. Kord v. State, 361 So.2d 800 (Fla. 3d DCA 1978); Rathburn v. State, 353 So.2d 902 (Fla. 4th DCA 1977). A statement of future intent, particularly one so dubious in sincerity as this, falls far too short of overt conduct to support a revocation.
The State urges that by revoking appellant’s probation, the trial court eliminated the reason for violence which would certainly have occurred as soon as appellant set foot in the county jail. While this point is not without merit, we do not think that our criminal justice system has reached the point where a defendant, even a subject possessed of the diminished constitutional safeguards attached to probationers, may be penalized for speaking his mind in an unguarded manner.
We are not unmindful that our decision returns appellant to his original sentence and that this court recently issued an opinion speaking to the practice of placing an accused on probation yet ordering incarceration as a special condition of probation, see Olcott v. State, 378 So.2d 303 (Fla. 2d DCA 1979), but that issue is not now before us in the matter sub judice and we decline to now consider same at this time.
The order of the trial court revoking appellant’s probation and subsequent sentence is REVERSED and set aside and the trial court is directed to reinstate the original sentence so imposed.
SCHEB, Acting C. J., and DANAHY, J., concur.